1
2
3
4
5

BLANK ROME LLP
Arash Beral (SBN 245219)
arash.beral@blankrome.com
Saam Takaloo (SBN 311598)
saam.takaloo@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

6
7

Attorneys for Plaintiff TBS BUSINESS
SOLUTIONS USA, INC.

8       **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  TBS BUSINESS SOLUTIONS USA INC. | Case No. 5:22-cv-00758 JGB (KKx) |
| 12                Plaintiff, | The Hon. Jesus G. Bernal |
| 13        vs. | **TBS BUSINESS SOLUTIONS USA INC.'S FIRST AMENDED COMPLAINT FOR:** |
| 14  STUDEBAKER DEFENSE GROUP, LLC, GLENN HILL, TOM MARX and DOES 1 through 10, inclusive | |
| 15 | **I)    BREACH OF WRITTEN CONTRACT** |
| 16                Defendants. | **II)    RESTITUTION TO AVOID UNJUST ENRICHMENT** |
| 17 | **III)    MONEY HAD AND RECEIVED** |
| 18 | **IV)    ACCOUNT STATED** |
| 19 | **V)    CONVERSION** |
| 20 | **VI)    VIOLATION OF CALIFORNIA PENAL CODE § 496** |
| 21 | **VII)    INTENTIONAL MISREPRESENTATION** |
| 22 | **VIII)  NEGLIGENT MISREPRESENTATION** |
| 23 | **IX)    FALSE PROMISE** |
| 24 | **X)    CONCEALMENT** |
| 25 | **XI)    EQUITABLE INDEMNITY** |
| 26 | **XII)    VIOLATION OF CAL BUS & PROF. CODE §§ 17200 ET SEQ.** |
| 27 | **JURY TRIAL DEMANDED** |
| 28 | |

1    Plaintiff TBS Business Solutions USA Inc., by and through its counsel, hereby

2    brings the following First Amended Complaint ("FAC") against Defendants

3    Studebaker Defense Group, LLC ("Studebaker"), Glenn Hill ("Hill"), Tom Marx

4    ("Marx" and collectively with Studebaker and Hill, the "Studebaker Parties"), and

5    DOES 1 through 10, inclusive, as follows:

6                        **JURISDICTION AND VENUE**

7        1.    The Court has subject matter jurisdiction over the claims asserted in this

8    matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between

9    the parties, and the amount in controversy exceeds the sum or value of $75,000,

10   exclusive of interest and costs.

11       2.    The Court has personal jurisdiction over the Studebaker Parties because

12   the Studebaker Parties have minimum contacts with California, purposefully availed

13   themselves of California's jurisdiction and consented to California's jurisdiction.

14       3.    TBS is informed and believes and thereon alleges that venue is proper in

15   the United States District Court for the Central District of California pursuant to 28

16   U.S.C. § 1391(b)(2) because the parties in this action conduct business within the

17   State of California including within this judicial district.

18                            **PARTIES**

19       4.    TBS is a California corporation with a principal place of business in the

20   County of Riverside.

21       5.    TBS is informed and believes and thereon alleges that Studebaker is a

22   Delaware limited liability company with a principal place of business in Cumming,

23   Georgia.

24       6.    TBS is informed and believes and thereon alleges that Hill is an

25   individual residing in Cleveland, Georgia, and is a controlling officer, member, and/or

26   manager of Studebaker.

27   ///

28   ///

161352.00603/129352964v.2                  1

**TBS BUSINESS SOLUTIONS USA INC.'S FIRST AMENDED COMPLAINT**

7.     TBS is informed and believes and thereon alleges that Marx is an individual residing in Alpharetta, Georgia, and is a controlling officer, member and/or manager of Studebaker.

8.     As set forth above, for purposes of this FAC, Studebaker, Hill, and Marx will collectively be referred to as the "Studebaker Parties."

9.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to TBS, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  TBS will seek leave of Court to amend the FAC to reflect the true names and capacities of the DOE Defendants when such identities become known.

10.     TBS is informed and believes and thereon alleges that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. TBS is informed and believes and thereon alleges that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## ALTER EGO ALLEGATIONS

11.     TBS is informed and believes and thereon alleges that there is a unity of interest and ownership between and among the following parties, such that any individuality and separateness between them never existed or has ceased, and that said parties are alter egos of one another:

a.   Studebaker was conceived, intended, and/or used by Marx and/or Hill (and DOES 1 through 10, inclusive) as a device for the purpose of defrauding others, including TBS;

///

///

b. Marx and/or Hill (and DOES 1 through 10, inclusive) exercised dominion over the finances of Studebaker and treated Studebaker's finances as their own;

c. Marx and/or Hill (and DOES 1 through 10, inclusive) used the corporate form of Studebaker for their own purposes as though it was their own, and did not follow proper corporate formalities; and

d. Adherence to the fiction of the separate existence of Studebaker as an entity distinct from Marx and/or Hill (and DOES 1 through 10, inclusive) would permit an abuse of the corporate privilege and would sanction fraud.

## **GENERAL ALLEGATIONS**

12.    TBS is a wholesaler and distributor of a wide range of products, including personal protective equipment (PPE).  TBS maintains various relationships with manufacturers and distributors and is able to secure and fulfill various PPE orders through its ordinary business channels.  On or about April 20, 2020, a customer, Primex Clinical Laboratories, Inc. ("Primex"), approached TBS regarding the purchase of N95 masks.

13.    TBS received from Primex purchase orders dated April 30, 2020.  The purchase orders called for the delivery of 1,000,000 masks at a total sales price of $970,000 ("PO1"), and 1,500,000 masks at a total sales price of $1,455,000 ("PO2"), respectively.

14.    After TBS informed Primex that it could not deliver masks manufactured by 3M, Primex authorized and TBS proceeded to place Primex's orders through wholesale supplier ORS Nasco.  However, ORS Nasco's delays in procuring the masks led to a sales rep, Tim Powers, recommending Studebaker to fulfill the orders. Studebaker held itself out to be a wholesale supplier that would be able to procure the required masks for TBS, and knew and acknowledged at all relevant times that TBS was procuring such masks for its customer, Primex.

15.    The Studebaker Parties promised that they would be able to supply Honeywell branded DC301 N95 masks ("DC301 Masks") with dates certain for delivery by November 20, 2020 for the masks ordered under PO1 and January 15, 2021 for the masks ordered under PO2 ("Studebaker Parties' Representation No. 1").

16.    At Primex's direction, and on reasonable reliance upon the Studebaker Parties' Representation No. 1, on or about October 19, 2020, TBS agreed to order the masks from Studebaker concerning PO1 ("Studebaker PO1"), for 50,000 boxes at a cost of $960,000.  The Studebaker PO1 was clear that the DC301 Masks would be delivered by November 20, 2020.  A true and correct copy of the Studebaker PO1 is attached hereto as **Exhibit A** and incorporated by reference herein.

17.    Approximately two weeks later, on or about November 5, 2020, Marx informed Tewodros "Teddy" Sahilu of TBS that Studebaker and Honeywell would be able to confirm the aforementioned purchase order so long as and as soon as TBS cancels its Honeywell mask orders through ORS Nasco ("Studebaker Parties' Representation No. 2").  TBS reasonably relied upon the Studebaker Parties' Representation No. 2, and canceled such existing purchase orders with ORS Nasco. TBS informed Marx via e-mail on November 6, 2020 that the orders with ORS Nasco were canceled.

18.    On or about November 23, 2020, however, TBS was informed by the Studebaker Parties that Honeywell had informed Studebaker that the Studebaker PO1 would be fulfilled by March 1, 2021, well beyond what was promised by the Studebaker Parties.

19.    In light of the foregoing, on or about December 1, 2020, TBS and Primex entered into revised purchase orders concerning PO1 and PO2 (the "Revised Primex POs"), that reflected the latest agreement between the parties.  True and correct copies of the Revised Primex POs are attached hereto as **Exhibit B** and incorporated by reference herein.

///

20.     On or about December 2, 2020, TBS wired the sum of $960,000 to Studebaker in connection with Studebaker PO1.

21.     On or about December 7, 2020, Primex sent a letter to TBS expressing its agreement to the revised PO1 and PO2 terms.

22.     Days earlier, on or about December 4, 2020, TBS sent a purchase order to Studebaker for the DC301 Masks concerning the revised PO2 ("Studebaker PO2"), for 75,000 boxes at a cost of $1,440,000.  The Studebaker PO2 was clear that the DC301 Masks would be delivered by January 15, 2021.  A true and correct copy of the Studebaker PO2 is attached hereto as **Exhibit C**.  On or about December 8, 2020, TBS wired the sum of $1,440,000 to Studebaker in connection with Studebaker PO2.

23.     On or about December 17, 2020, TBS requested an update, informing Marx that it required this information for its customer, Primex, and needed to provide Primex with an order confirmation update.  Marx responded that Honeywell had confirmed that all orders had been processed.  Indeed, the next day, TBS became informed that Honeywell had acknowledged the Studebaker PO2 with an estimated delivery date of January 12, 2021.

24.     The day before the shipment on Studebaker PO2 was to arrive, on or about January 11, 2021, TBS contacted Marx to inquire about the status of that order. Marx informed TBS that the shipment in fulfillment of Studebaker PO1 was now scheduled to arrive on January 15, 2021 ("Studebaker Parties' Representation No. 3").

25.     On or about January 14, 2021, however, TBS became informed that the delivery of the Studebaker PO2 masks was going to be further delayed to February 15, 2021.  When TBS contacted Studebaker regarding this further delay, Marx denied it. Marx informed TBS that the new expected delivery date was false, that the dates he had seen in the system and which were given to Studebaker from Honeywell are different from those given to TBS, and that the Vice President of PPE at Honeywell had assured Studebaker that Honeywell is working on fulfilling the PO2 masks on time ("Studebaker Parties' Representation No. 4").

26.    The next day, on or about January 15, 2021, Marx stated that Honeywell would deliver 349,200 DF300H919 model masks as an "interim solution" until the DC301 Masks are delivered ("Studebaker Parties' Representation No. 4").  Marx also represented that the DC301 Masks' delay was partly the result of a broken stamp head machine that is now fixed and underway, and that he requested that Honeywell furnish shipping documents as soon as possible for TBS' review ("Studebaker Parties' Representation No. 5").

27.    On or about January 19, 2021, Marx stated that he was ensuring that delivery of the masks would be expedited, that Honeywell was getting the shipment out that day, and that shipping documents would be provided as soon as the warehouse dispatched the order ("Studebaker Parties' Representation No. 6").

28.    Weeks and months went by, and the Studebaker Parties continued their campaign of assuaging TBS.  As of April 2021, no masks had been delivered at all.

29.    On or about April 16, 2021, Primex then demanded that the Revised Primex POs be canceled, and TBS attempted to honor Primex's wishes.  That same day, TBS requested that Studebaker cancel the Studebaker PO2 because Primex had cancelled its order with TBS, and TBS provided wire instructions for a refund of the sum of $1,440,000 that it had wired to Studebaker on December 8, 2020.  No one from Studebaker acknowledged this request or otherwise responded to TBS.

30.    On or about April 19, 2021, TBS requested an update on the refund for the Studebaker PO2, as its client, Primex, needed an update as soon as possible.

31.    On or about April 20, 2021, Hill responded that TBS' cancellation request was forwarded to Studebaker's finance department and legal team, and that they would have an answer for TBS soon.  Hill mentioned that there were issues with canceling other clients' orders, so they were seeking guidance from the manufacturer on cancellations.  TBS responded that this request is a priority for its customer, Primex.

///

**TBS BUSINESS SOLUTIONS USA INC.'S FIRST AMENDED COMPLAINT**

32.    On or about April 22, 2021, Hill informed TBS that the outstanding mask deliveries would be ready to ship immediately and that shipments would be seen in the coming days ("Studebaker Parties' Representation No. 7").  Hill double-downed on that representation on or about April 23, 2021, stating that Studebaker's team worked with Honeywell to reallocate older orders to prioritize TBS' mask deliveries, and that progress would be seen in the middle of the following week ("Studebaker Parties' Representation No. 8").  Hill also acknowledged that Studebaker would keep TBS apprised of developments to pass on to its client—referring to Primex.

33.    On or about April 28, 2021, Hill informed TBS that Studebaker was working to fulfill the remainder of TBS' Studebaker PO1 mask order in one shipment, so that TBS can settle any issues with its client—Primex—and that Studebaker was making good progress on reallocating the cancelled Studebaker PO2 order ("Studebaker Parties' Representation No. 9").

34.    Another several weeks went by with nothing forthcoming.  On or about May 20, 2021, TBS reached out directly to Honeywell regarding the outstanding order issues with Studebaker, referencing the Honeywell order acknowledgment numbers that Studebaker provided to TBS for the Studebaker PO1 and PO2.  TBS was informed that *Honeywell had fulfilled all of Studebaker's purchase orders, and that they have no outstanding obligations to Studebaker.*

35.    Upon this revelation, TBS immediately reached out to the Studebaker Parties demanding a prompt refund of the money that Primex had wired to TBS and which was then wired to Studebaker.

36.    On or about May 21, 2021, Hill sent a formal status update to TBS.  A true and correct copy of this status update is attached hereto as **Exhibit D**.

    a.  In the status update, the Studebaker Parties denied Honeywell's contentions regarding Honeywell's fulfillment of all outstanding orders ("Studebaker Parties' Representation No. 10"), but did not provide any substance or evidence that would counter such contentions.

b. Hill represented vaguely once again that the Studebaker Parties were working with Honeywell to complete the outstanding orders ("Studebaker Parties' Representation No. 11").

c. Over one month after TBS requested—and Studebaker acknowledged—cancellation of the Studebaker PO2 and a refund, Hill attempted to cast the blame on Honeywell, claiming that Honeywell's purchase orders are non-cancelable ("Studebaker Parties' Representation No. 12").

d. Hill also attempted to discourage legal action on TBS' part by blaming the global COVID-19 pandemic, and the U.S. government's subsequent mandates and control over Honeywell, to suggest that any litigation would not be prioritized by the courts ("Studebaker Parties' Representation No. 13").

e. At that point in time, $1,440,000 associated with Studebaker PO2 was overdue as was $700,000 out of the original $960,000 being owed and Studebaker had delivered $357,942 worth of masks or refunds overall. Hill offered for the outstanding portion of the Studebaker PO1, and the entire PO2, in lieu of a refund, where Studebaker would immediately send 2,450,000 alternative model Honeywell brand masks.

37. The same day, TBS responded to the Studebaker Parties' status update reiterating the request for a full refund of all outstanding funds given Primex's wish for a refund.

38. On or about May 25, 2021, Marx informed TBS that Studebaker's CFO emailed Honeywell to confirm the funds with them, and demanded that a refund be issued. Marx confirmed that TBS was owed a refund from Studebaker in the amount of TBS' funds that were allegedly with Honeywell at the time. ("Studebaker Parties' Representation No. 14").

39. On or about June 14, 2021, Hill sent a second status update once again taking no responsibility and blaming the lack of mask delivery and lack of a refund

squarely on Honeywell ("Studebaker Parties' Representation No. 15"). A true and correct copy of this June 14, 2021 status update is attached hereto as **Exhibit E**.

40.  TBS is informed and believes and thereon alleges that the Studebaker Parties' Representation Nos. 1 through 15 were all false, made only to induce TBS to believe that the Studebaker Parties were honest actors and to cause TBS undue prejudice and delay. In truth, however, TBS is informed and believes and thereon alleges that the Studebaker Parties likely misappropriated and converted the subject funds for their own use. And while the Studebaker Parties offered some alternative products to fulfill the subject orders, Primex rejected those products or any other form of resolution.

41.  As a result of the Studebaker Parties and DOES 1 through 10's conduct, TBS has been left without the subject funds, and without the goods that it paid for, leaving it with consequential damages, as well as loss of goodwill with its customers, among many other things. TBS has also been forced to expend considerable sums to represent itself in a separate but related action filed in this District, *Springfield Clinic, LLP v. Primex Clinical Laboratories, Inc.*, Case 2:21-cv-03595-RSWL-AS.

## FIRST CLAIM FOR RELIEF

### Breach of Written Contract

### (Against Studebaker)

42.  TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

43.  TBS and Studebaker entered into the Studebaker purchase orders, consisting of the Studebaker PO1 and Studebaker PO2, under which TBS was to receive 50,000 boxes of the DC301 masks at a cost of $960,000, and 75,000 boxes of the DC301 masks at a cost of $1,440,000, respectively, for the benefit of Primex.

44.  TBS performed each and every one of its obligations under the Studebaker PO1 and PO2, or was excused from such obligations.

///

45.    Studebaker breached its obligations under the Studebaker PO1 and PO2 by failing to deliver $700,000 worth of DC301 Masks associated with the Studebaker PO1 to TBS, and the entirety of the DC301 Masks associated with the Studebaker PO2, despite collecting all of the money due for such masks from TBS.

46.    As a direct and proximate result of Studebaker's breaches of the Studebaker PO1 and PO2, TBS has been damaged in an amount to be proven at trial in excess of $2,180,000.

## SECOND CLAIM FOR RELIEF

### Restitution to Avoid Unjust Enrichment

### (Against the Studebaker Parties, and DOES 1 through 10, inclusive)

47.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

48.    TBS paid the sum of $2,440,000 to the Studebaker Parties, and DOES 1 through 10, inclusive, in December 2020 for a total of 125,000 boxes of DC301 masks, per the Studebaker PO1 and PO2.  As of the date of filing of this FAC, Studebaker has delivered only $260,000 worth of masks to TBS, and has been unable to furnish TBS with the remaining masks that are the subject of the aforementioned purchase orders.

49.    TBS has demanded a refund but the Studebaker Parties, and DOES 1 through 10, inclusive, have failed and refused to provide such refund.  The Studebaker Parties, and DOES 1 through 10, inclusive, have therefore been unjustly enriched at the expense of TBS in the amount of at least $2,180,000.

50.    As a direct and proximate result of the conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, TBS has been damaged and is entitled to disgorgement of the amount of at least $2,180,000.

///

///

///

**THIRD CLAIM FOR RELIEF**

**Money Had and Received**

**(Against the Studebaker Parties, and DOES 1 through 10, inclusive)**

51.   TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

52.   TBS paid the sum of $2,440,000 to the Studebaker Parties, and DOES 1 through 10, inclusive. in December 2020 for a total of 125,000 boxes of DC301 Masks, per the Studebaker PO1 and PO2.  Such funds were to be utilized by the Studebaker Parties, and DOES 1 through 10, inclusive. for the benefit of TBS (and third party beneficiary, Primex) in the form of payment for the 125,000 boxes of the DC301 Masks.

53.   The Studebaker Parties, and DOES 1 through 10, inclusive. have failed to deliver $2,180,000 worth of DC301 Masks pursuant to the Studebaker PO1 and PO2 or provide a refund, and therefore, the sum of $2,180,000 paid by TBS to the Studebaker Parties, and DOES 1 through 10, inclusive. was not in fact utilized for the benefit of TBS and Primex.

54.   The Studebaker Parties, and DOES 1 through 10, inclusive. have refused and continue to refuse to return the amount of at least $2,180,000 to TBS and Primex.

55.   As a direct and proximate result of the conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, TBS has been damaged and is entitled to disgorgement of the amount of at least $2,180,000.

**FOURTH CLAIM FOR RELIEF**

**Account Stated**

**(Against the Studebaker Parties, and DOES 1 through 10, inclusive)**

56.   TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

///

///

57.    The Studebaker Parties, and DOES 1 through 10, inclusive, owed TBS money from previous financial transactions in the form of pending refunds for goods not delivered.

58.    TBS and the Studebaker Parties, and DOES 1 through 10, inclusive, by words or conduct, agreed that the amount that TBS claimed to be due from the Studebaker Parties, and DOES 1 through 10, inclusive, was the correct amount owed.

59.    The Studebaker Parties, and DOES 1 through 10, inclusive, by words or conduct, promised to pay the stated amount to TBS.

60.    The Studebaker Parties, through communications with TBS, acknowledged and confirmed that TBS was owed a refund from Studebaker in the amount of TBS' funds that Studebaker had received and allegedly paid to Honeywell for masks that were the subject of the Studebaker PO1 and PO2.

61.    The Studebaker Parties, and DOES 1 through 10, inclusive, have not paid TBS any of the amount owed under this account in the form of the acknowledged refunds; and

62.    The Studebaker Parties, and DOES 1 through 10, inclusive, currently owe TBS at least $2,180,000.

## FIFTH CLAIM FOR RELIEF

### Conversion

### (Against the Studebaker Parties, and DOES 1 through 10, inclusive)

63.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

64.    The Studebaker Parties, and DOES 1 through 10, inclusive, substantially interfered with and converted TBS' property by, among other things, taking a payment of $2,180,000 for the DC301 Masks that are the subject of the Studebaker PO1 and PO2, and failing to deliver such masks to TBS.

///

///

65.    TBS demanded a refund of the $2,180,000 paid to the Studebaker Parties, and DOES 1 through 10, inclusive, due to Studebaker's failure to deliver the DC301 Masks.

66.    The Studebaker Parties, and DOES 1 through 10, inclusive, have failed and refuse to return the sum of $2,180,000 to TBS despite TBS' demands.

67.    TBS did not consent to the retention of the aforementioned sum of $2,180,000 by the Studebaker Parties, and DOES 1 through 10, inclusive.

68.    TBS was harmed by the conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, mentioned herein.

69.    The conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, was a substantial factor in causing TBS' harm.

70.    The Studebaker Parties, and DOES 1 through 10, inclusive, are liable for any loss or damages, subject to proof, suffered by TBS as a direct and proximate result of their acts and omissions alleged herein.  While TBS cannot ascertain at this time the full nature and extent of damages suffered resulting from the conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, TBS is informed and believes, and on that basis alleges, that it is not less than $2,180,000, plus interest, subject to proof at trial.

71.    Additionally, the Studebaker Parties, and DOES 1 through 10, inclusive, have acted fraudulently, oppressively, and maliciously.  Thus, in addition to compensatory damages, TBS is also entitled to recover exemplary and punitive damages from the Studebaker Parties, and DOES 1 through 10, inclusive.

## SIXTH CLAIM FOR RELIEF

### Violation of California Penal Code § 496

### (Against the Studebaker Parties, and DOES 1 through 10, inclusive)

72.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

///

73.    California Penal Code § 496(a) provides: "Every person who … conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner … shall be punished …" Penal Code § 496(c) in turn provides that: "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

74.    As alleged above, the Studebaker Parties, and DOES 1 through 10, inclusive, currently owe at least $2,180,000 to TBS but have failed to remit that payment.  Such funds were to be used towards the purchase of the DC301 Masks that are the subject of the Studebaker PO1 and PO2.  Once TBS canceled the Studebaker POs due to the Studebaker Parties' failure to perform and demanded the return of its money, the Studebaker Parties, and DOES 1 through 10, inclusive, had no further right, title, license, or interest to retain the $2,180,000.

75.    Indeed, upon TBS' demand for the return of its money, the Studebaker Parties, and DOES 1 through 10, inclusive, knew that they had no further right to conceal or withhold TBS' money from it.  As such, and once TBS demanded the return of its money and the Studebaker Parties, and DOES 1 through 10, inclusive, refused to return it, the character of that money transformed to stolen property.  Therefore, once the Studebaker Parties, and DOES 1 through 10, inclusive, engaged in a scheme to conceal and withhold TBS' money after they had no further right, title, license, or interest in that money, they knew that they were stealing the property or otherwise obtaining that property in a manner constituting theft.

76.    In refusing to return the $2,180,000 to TBS, the Studebaker Parties, and DOES 1 through 10, inclusive, intentionally and substantially interfered with TBS' property rights.  Certainly, TBS did not consent to allow the Studebaker Parties, and DOES 1 through 10, inclusive, to retain the $2,180,000.

///

///

77.     As a result of the conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, TBS has been damaged, and such conduct was a substantial factor in causing TBS' harm.

78.     TBS is informed and believes, and on that basis alleges, that the Studebaker Parties, and DOES 1 through 10, inclusive, have utilized the subject funds for their own purposes such that an imposition of a constructive trust on the interests of the Studebaker Parties, and DOES 1 through 10, inclusive, including any business interests, profits, investments, real estate, and other assets, is necessary and appropriate under the circumstances.

79.     The conduct alleged above constitutes a violation of Penal Code § 496 such that TBS is entitled to recover "three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees," in accordance with Penal Code § 496(c).

80.     In the alternative to treble damages as provided for in Penal Code § 496, TBS alleges that in doing the things described above, the Studebaker Parties, and DOES 1 through 10, inclusive, acted with the intent to deprive TBS of its legal rights and to injure it such that the actions of the Studebaker Parties, and DOES 1 through 10, inclusive, constitute fraud, oppression, or malice within the meaning of Civil Code Section 3294.  The conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, was and continues to be despicable, oppressive, and outrageous, justifying the imposition of punitive and exemplary damages against the Studebaker Parties, and DOES 1 through 10, inclusive, to make an example of them, and to deter such conduct in the future in an amount that proof at trial may indicate is appropriate.

## SEVENTH CLAIM FOR RELIEF

### Intentional Misrepresentation

### (Against the Studebaker Parties)

81.     TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

82.    The Studebaker Parties, individually and on behalf of Studebaker, made various representations in order to induce TBS to cancel other orders, provide substantial funds to them, and rely upon them to fulfil these orders.  Those representations are set forth above (Studebaker Parties' Representation Nos. 1 through 15).

83.    The Studebaker Parties' representations were false or misleading.

84.    The Studebaker Parties knew that the representations made to TBS were false or misleading when they made them, or, at minimum, they made the representations recklessly and without regard for their truth.

85.    The Studebaker Parties intended for TBS to rely upon their misrepresentations.

86.    TBS reasonably relied on the Studebaker Parties' Representations Nos. 1 through 15 by canceling other orders, entering into revised purchase orders with Primex, providing the $2,440,000 in funds to Studebaker, and otherwise relying upon the Studebaker Parties' promises to fulfil the orders.

87.    TBS' reliance on the Studebaker Parties' representations was a substantial factor in causing TBS' harm.  But for the Studebaker Parties' representations, TBS would have conducted itself differently as described above, and/or would not have agreed to enter into the transactions underlying the Studebaker PO1 and PO2, or continue to work with the Studebaker Parties.

88.    TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

89.    In engaging in the conduct described herein and as described fully before, the Studebaker Parties acted oppressively and with malice with a conscious disregard of TBS' rights.  As a result thereof, TBS is entitled to punitive and exemplary damages in an amount according to proof at trial.

///

///

## EIGHTH CLAIM FOR RELIEF

### Negligent Misrepresentation

### (Against the Studebaker Parties)

90.     TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

91.     The Studebaker Parties, both individually and on behalf of Studebaker, made various representations as described above.

92.     The Studebaker Parties' Representation Nos. 1 through 15 were false or misleading as described above.

93.     The Studebaker Parties had no reasonable grounds for believing that such representations were true when they made them.

94.     The Studebaker Parties intended that TBS rely on their misrepresentations.

95.     TBS reasonably relied on the Studebaker Parties representations as described above.

96.     TBS' reliance on the Studebaker Parties' representations was a substantial factor in causing TBS' harm.  But for the Studebaker Parties' representations, TBS would have conducted itself differently as described above.

97.     TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

## NINTH CLAIM FOR RELIEF

### False Promise

### (Against the Studebaker Parties)

98.     TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

99.     The Studebaker Defendants, both individually and on behalf of Studebaker, made various representations as described above (Studebaker Parties'

Representations No. 1 through 5), all of which constituted promises that the Studebaker Parties did not intend to perform.

100.    Such promises were false or misleading as described above.

101.    The Studebaker Parties knew that their promises were false or misleading when they made them or, at a minimum, made the promises recklessly and without regard for their truth.

102.    The Studebaker Parties intended that TBS rely on their promises.

103.    TBS reasonably relied on the Studebaker Parties' promises.

104.    TBS was harmed by the Studebaker Parties' promises as the Studebaker Parties failed to perform.

105.    TBS' reliance on the Studebaker Parties' representations was a substantial factor in causing TBS' harm.  But for the Studebaker Parties' representations, TBS would have conducted itself differently as described above.

106.    TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

107.    In engaging in the conduct described herein and as described fully before, the Studebaker Parties acted oppressively and with malice with a conscious disregard of TBS' rights.  As a result thereof, TBS is entitled to punitive and exemplary damages in an amount according to proof at trial.

## TENTH CLAIM FOR RELIEF

### Concealment

### (Against the Studebaker Parties)

108.    TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

109.    TBS and the Studebaker Parties were in a business relationship as parties to the Studebaker POs.  The Studebaker Parties had the direct connection to the manufacturer, Honeywell and, as such, held a superior position over TBS by virtue of the direct access to knowledge on the whereabouts of the masks and the status of the

purchase orders.  Moreover,  no party is allowed to speak a "half-truth" by concealing the material facts underlying its representations.

110.   In making the Studebaker Parties' Representations Nos. 1 through 15, the Studebaker Parties disclosed some facts to TBS but intentionally failed to disclose other facts, making their representations deceptive.  These omitted facts were known and could only have been known to the Studebaker Parties.  These omitted facts included facts about the true status of the orders, the shipments, and the subject funds, among other things.

111.   The Studebaker Parties knew of the concealed facts.

112.   The Studebaker Parties intended to deceive TBS by concealing these facts.

113.   Had the Studebaker Parties disclosed the concealed facts to TBS, TBS would reasonably have acted differently.

114.   TBS has been harmed in an amount to be proven at trial, estimated to be at least $2,180,000.

115.   In engaging in the conduct described herein and as described fully before, the Studebaker Parties acted oppressively and with malice with a conscious disregard of TBS' rights.  As a result thereof, TBS is entitled to punitive and exemplary damages in an amount according to proof at trial.

## ELEVENTH CLAIM FOR RELIEF

### Equitable Indemnity

### (Against the Studebaker Parties, and DOES 1 through 10, inclusive)

116.   TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

117.   Primex claims that TBS breached the Revised Primex POs, among other causes of action, in a third party complaint brought in the U.S. District Court for the Central District of California, Case Number 2:21-cv-03595-RSWL-AS (the "Primex Third Party Complaint").

118.   While TBS denies liability in connection with Primex's claims, in the event that TBS is found to be liable to Primex, any such liability should be secondary and derivative in light of the acts and omissions of the Studebaker Parties, and DOES 1 through 10, inclusive, described herein.

119.   The transactions between Primex and TBS on the one hand, and TBS and Studebaker on the other hand, are connected, as TBS is Primex's "agent," and Primex is a third party beneficiary of the Studebaker PO1 and PO2.

120.   The Studebaker Parties were aware, and acknowledged at all relevant times, that the Studebaker PO1 and PO2 were for the benefit of Primex.   On multiple occasions, TBS requested updates as to the status of these purchase orders for and based on the request of its customer, Primex.  The Studebaker Parties also acknowledged Primex's status as a third party beneficiary of the Studebaker PO1 and PO2 on multiple occasions, promising to keep TBS apprised of developments to pass on to Primex, as well as representing that solutions were being worked on to settle any issues that TBS was having with Primex, as its customer.

121.   The Studebaker Parties, and DOES 1 through 10, inclusive, therefore owe a duty to Primex, making them responsible for any liability that TBS—Primex's agent—would have to Primex in connection with The Studebaker Parties, and DOES 1 through 10, inclusive's actions.

122.   Accordingly, should TBS be found to be liable to Primex in any amount in connection with the allegations set forth in the Primex Third Party Complaint, TBS seeks complete indemnity from the Studebaker Parties, and DOES 1 through 10, inclusive.

123.   TBS has been forced to incur legal fees, including reasonable attorney's fees and costs, in defending itself against claims by Primex, due to the conduct of the Studebaker Parties, and DOES 1 through 10, inclusive, named here.  TBS is thus entitled to an award of its reasonable attorney's fees and costs.

///

## **TWELFTH CLAIM FOR RELIEF**

### **Violations of The Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. (the "UCL")**

### **(Against the Studebaker Parties, and DOES 1 through 10, inclusive)**

124. TBS incorporates by reference the foregoing paragraphs as though each and every allegation was set forth herein.

125. Through the all of the acts alleged above, the Studebaker Parties, and DOES 1 through 10, inclusive, have engaged in unfair, unlawful and/or fraudulent conduct in violation of the UCL.

126. The acts and practices of the Studebaker Parties, and DOES 1 through 10, inclusive, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to TBS.

127. The Studebaker Parties, and DOES 1 through 10, inclusive, have unreasonably and unjustifiably retained the monetary benefits of engaging in said unfair business practices, all of which benefits have unjustly enriched the Studebaker Parties, and DOES 1 through 10, inclusive.

128. As a result of the foregoing, TBS is entitled to restitution and injunctive relief as a result of the unfair business practices of the Studebaker Parties, and DOES 1 through 10, inclusive.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure Rule 38(b), TBS demands a trial by jury of all issues triable herein.

## **PRAYER FOR RELIEF**

WHEREFORE, with respect to the Studebaker Parties, and DOES 1 through 10, inclusive, TBS prays for:

1. General, special, and consequential damages in an amount not less than $2,180,000;

2. Disgorgement of all funds unjustifiably withheld;

1     3.    Constructive trust(s) over assets of the Studebaker Parties and DOES 1
2  through 10, inclusive;

3     4.    Exemplary and punitive damages in an amount to be proven at trial;

4     5.    Treble damages;

5     6.    Pre-judgment and post-judgment remedies including temporary
6  restraining orders, preliminary injunctions, permanent injunctions, temporary
7  protective orders, right to attach orders, writs of attachment, etc.

8     7.    Indemnity;

9     8.    Pre- and post-judgment interest;

10    9.    Reasonable attorneys' fees and costs; and

11    10.    Such further and other relief as this Court deems just and proper.

13  DATED:  August 18, 2022          BLANK ROME LLP

15                                  By: */s/ Saam Takaloo*
16                                  Arash Beral
                                    Saam Takaloo
17                                  Attorneys for Plaintiff TBS BUSINESS
                                    SOLUTIONS USA INC.